David L. **CANEDY,** Jr., Plaintiff–Appellant,

v.

Peggy **BOARDMAN,** Jeffrey P. Endicott, Karen Radtke, and John Bell, Defendants–Appellees.

No. 95–1931.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 20, 1995.

Decided July 19, 1996.

Adrienne R. Borisy (argued), Borisy & Gross, Platteville, WI, for Plaintiff–Appellant.

John J. Glinski (argued), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendants–Appellees.

Before CUMMINGS and CUDAHY, Circuit Judges, and LEINENWEBER, District Judge.*

CUDAHY, Circuit Judge.

David Canedy is a Muslim, and, while he was incarcerated in a Wisconsin prison, he was compelled to be naked in the presence of female guards. He believed that this compulsion violated his constitutional rights, and he brought a lawsuit under 42 U.S.C. § 1983. The district court dismissed that suit at its outset, but this court reversed the dismissal, and Canedy renewed his complaint, alleging that the defendants had violated his rights under the First, Fourth and Fourteenth

---

* The Hon. Harry D. Leinenweber of the United States District Court for the Northern District of Illinois is sitting by designation.

Amendments to the Constitution during the course of their official duties. His allegations gave rise to a large number of particular claims, and he lost on all of them in various procedural maneuvers at different stages of the litigation. In this appeal, he seeks to revive all of his claims based on his right to the free exercise of religion and one of his claims pertaining to his constitutionally protected privacy interests.

## I.

In 1992, Canedy was an inmate at the Columbia Correctional Institution (CCI) in Portage, Wisconsin, a prison for men. He became aware that guards could sometimes see him in the nude, while he was sleeping, showering or using the toilet. Because the prison provided sleepwear and curtains for the showers and toilets, Canedy and the other inmates had some privacy, but it was always possible for guards to see his naked body, either deliberately or inadvertently, as he performed ordinary intimate activities. Guards also had other occasions to see him in the nude when they conducted the strip searches that are a routine part of prison life. Some of the guards were women, so Canedy believed that it was possible, perhaps even certain, that some women had seen him naked while he was asleep, or in the shower or toilet. And he knew that a female guard had been present on one occasion when he was subjected to a strip search.

This situation greatly troubled Canedy because his religious faith imposed a restriction on the display of his body which provided that he sinned if someone of the opposite sex saw him in the nude. His distress led him to file a *pro se* complaint in the district court. The complaint contained two counts, both based on § 1983 and the Fourth Amendment. One count pertained to the routine observation of his intimate activities and the other pertained to the strip search. As defendants, he named Peggy Boardman, the female guard who was present at the strip search, Karen Radtke, a prison official who had assigned Boardman to be present at the strip search, Jeffrey Endicott, the warden of CCI, and John Bell, another prison official who had investigated Canedy's complaints

about these incidents. On the defendants' motion, the district court dismissed the complaint, ruling that Canedy had not stated valid claims under the Fourth Amendment. We reversed this decision in *Canedy v. Boardman*, 16 F.3d 183 (7th Cir.1994) and remanded the case.

On remand, the district court appointed a lawyer for Canedy who filed an amended complaint. The amended complaint made the same factual allegations as the original *pro se* complaint, but it raised some new legal claims. To be specific, Canedy alleged that the defendants had violated his right to the free exercise of religion under the First and Fourteenth Amendments, as well as his privacy rights under the Fourth and Fourteenth Amendments, whenever female prison guards saw his naked body, either in a strip search or during the routine observation of prisoners. As a remedy for these violations, Canedy requested injunctive relief, monetary damages and any other available relief.

Although the amended complaint lumped the factual allegations and legal theories together without clearly designating which facts related to which legal claims, the district court seems to have treated it as if it asserted approximately twenty separate claims. The conduct of the litigation suggests that the court found that there were four distinct factual situations, each of which generated claims: the strip search, the conditions in the showers, the conditions in the toilets and the sleeping conditions. Each of these situations gave rise to claims related to Canedy's free exercise rights and claims related to his constitutional privacy interests. Endicott and Bell were defendants in all claims related to each situation, and Boardman and Radtke were defendants in all of the claims arising from the strip search alone.

During pretrial proceedings, the district court dismissed all of Canedy's claims against Bell. It also granted summary judgment for Endicott on the claims pertaining to the observation of Canedy while he was sleeping or using the toilet. It denied Endicott's motion for summary judgment on the claims related to the showers and to the strip search.

The trial went forward on the basis of the remaining claims. At the close of the evidence, the three remaining defendants moved for judgment as a matter of law on all of the claims under the First Amendment, and the district court granted that motion. The district court also entered judgment as a matter of law for Endicott on the privacy-right claim against him arising from the strip search. The jury considered the remaining claims against Boardman, Radtke and Endicott and entered verdicts for all of them on every claim. Canedy's appeal challenges only the judgments as a matter of law, which we will review *de novo*. *Williams v. O'Leary*, 55 F.3d 320, 322 (7th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 527, 133 L.Ed.2d 434 (1995).

## II.

In entering judgment as a matter of law on the First Amendment claims, the district court held that all of the defendants were protected by the defense of qualified immunity. A state official can rely upon qualified immunity as a complete defense against claims under § 1983 when the claims pertain to the performance of discretionary functions, when his or her conduct in performing those functions does not pertain to clearly established statutory or constitutional rights of which a reasonable person would have known and when the claims are for monetary damages. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Here, Canedy requested every remedy available under § 1983–injunctive and declaratory relief as well as monetary damages—so qualified immunity did not, in theory, provide a complete defense. But there was a practical problem with Canedy's pursuit of any remedy except damages. All of the defendants were officials at CCI, but, by the time of the trial, Canedy was an inmate at another prison. For reasons not reflected in the record, Canedy (and his lawyer) did not add new defendants to the complaint or amend his prayer for relief after his transfer away from CCI. He therefore could not obtain injunctive or declaratory relief against any of the defendants, and, by the time of trial, money damages were the only form of relief available to him. As the dis-

trict court noted, qualified immunity was therefore available as a complete defense. The district court ruled that all of the defendants were entitled to it because, at the time of their conduct, the law had not clearly established that observance of a religiously based nudity taboo was part of a prisoner's First Amendment right to the free exercise of religion.

Canedy challenges this ruling with an argument that takes the form of a syllogism. The syllogism works something like this: prisoners' First Amendment rights to the free exercise of religion are well-established; nudity taboos are a well-established part of the exercise of Islam (and many other religions); therefore, prisoners have a well-established right to observe nudity taboos based on their religion. By this reasoning, Canedy argues that the district court's application of qualified immunity was incorrect.

Canedy is obviously correct in asserting the major premise of his syllogism; it is well-established that prisoners have the right to freely exercise their religious beliefs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). And we will assume *arguendo* that reasonable people know, or should know, that nudity taboos are a well-established part of the practice of Islam. But these premises do not inexorably lead to the conclusion that he asserts.

A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion. *See O'Lone*, 482 U.S. at 352, 107 S.Ct. at 2406; *Hunafa v. Murphy*, 907 F.2d 46, 48 (7th Cir.1990). A prison may restrict a prisoner's ability to adhere absolutely to a particular tenet of his religion, and if the prison has sound penological interests supporting the restriction and, if those interests outweigh the prisoner's religious interests, the restriction does not violate the First Amendment. *O'Lone*, 482 U.S. at 352, 107 S.Ct. at 2406; *Hunafa*, 907 F.2d at 48. Hence, a prisoner's rights to observe his religious taboos may be unclear.

In the case before us, the prison had a very strong interest in having its guards observe prisoners at all times and in all situations, and it had an interest in providing equal employment opportunity to women. See *Canedy*, 16 F.3d at 186. Canedy, of course, had a constitutional interest in observing Islam's nudity taboos. Canedy's argument here is persuasive only if it was clear that a Muslim inmate's interest in observing nudity taboos outweighed the prison's interests. But in 1992, the time of the events in question here, it was not at all clear that Canedy's interests decisively outweighed those of the prison. See *Canedy*, 16 F.3d at 186 n. 2. Therefore, none of the defendants in this case could have known that their specific conduct would violate Canedy's First Amendment rights. The district court properly applied the defense of qualified immunity here.

Canedy argues that the district court's consideration of qualified immunity was flawed because it did not account for the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb–1. RFRA is, however, irrelevant to this case. We have recently held that RFRA creates a statutory right to judicial review of laws of general applicability that burden the free exercise of religion but that do not violate the Constitution. *Mack v. O'Leary*, 80 F.3d 1175, 1178 (7th Cir.1996). RFRA does nothing to change the nature of constitutional rights as defined by the courts.[1] *Id.* at 1181. Canedy's amended complaint here invoked only § 1983 and the First Amendment; it made no mention of RFRA. Therefore, any rights that Canedy may have had under RFRA are not at stake in this case.

### III.

Canedy's final challenge pertains to the district court's judgment as a matter of law for Endicott on the privacy right claim that arose from the strip search. According to the facts as alleged by Canedy, Endicott was liable on this claim because he created the

conditions under which Boardman's participation in the strip search could infringe upon his constitutionally protected privacy interests. Under this theory of the case, Endicott could be liable to Canedy only if the strip search actually violated Canedy's constitutional rights. But, in entering its verdict for Boardman, the jury found that the strip search did *not* violate Canedy's constitutional rights. Canedy does not challenge this verdict in this appeal, and, consequently, he has no basis to challenge the judgment which was entered for Endicott as a matter of law.

Therefore, although claims of the sort raised in this case present sensitive and serious questions, they cannot be resolved in Canedy's favor given the particular posture presented here. This is not to say that they may never be resolved in a prisoner's favor.

For these reasons, the judgment of the district court is AFFIRMED.

---

1. In our earlier ruling in this case, we noted there was some suggestion that RFRA purported to change the judiciary's approach to the analysis of First Amendment claims. We also noted that such a change would raise a constitutional ques-

tion and that this question was not before us at the time. *Canedy*, 16 F.3d at 186 n. 2. *Mack* has clearly resolved the questions to which we previously adverted.