David BLIHOVDE, Travis Brecher and Renee Houser (formerly known as Renee Jensen), Individually, and on behalf of all others similarly situated, Plaintiffs,

v.

ST. CROIX COUNTY, WISCONSIN, Dennis D. Hillstead, individually and in his capacity as the St. Croix County Sheriff, Karen Humphrey, individually, and in her capacity as "Jail Captain" of the St. Croix County Jail, Officer Mark Volz of the North Hudson Police Department, Kristen Anderson, individually and in her capacity as a St. Croix County Deputy Sheriff, Terry Larson, individually and in his capacity as St. Croix County Deputy Sheriff, Lisa Opel, individually and in her capacity as a St. Croix County Deputy Sheriff, Shelby Lane, individually and in her capacity as a St. Croix County Deputy Sheriff and Deputy Sheriffs John and Jane Does 1 through 30, individually and in their capacities St. Croix County Deputy Sheriffs, Defendants.

No. 02–C–450–C.

United States District Court, W.D. Wisconsin.

Feb. 13, 2003.

Vincent J. Moccio, Minneapolis, MN, for Plaintiffs.

Raymond J. Pollen, Crivello, Carlson & Mentkowski, Milwaukee, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for monetary relief brought pursuant to 42 U.S.C. § 1983. Plaintiffs David Blihovde, Travis Brecher and Renee Houser and all others similarly situated allege that defendants Mark Volz, Kristen Anderson, Terry Larson, Lisa Opel, Shelby Lane and John and Jane Does 1–30 subjected plaintiffs to strip searches without reasonable suspicion in violation of the Fourth and Fourteenth Amendments. In addition, plaintiffs allege that the individual defendants acted pursuant to a custom or policy of defendants St. Croix County, Dennis Hillstead and Karen Humphrey to strip search all arrestees at the St. Croix County jail without individualized suspicion. Jurisdiction is present under 28 U.S.C. § 1331.

Presently before the court is defendants' "Motion to Strike Request to Certify Class." Plaintiffs argue initially that defendants' motion is "premature" because plaintiffs have not yet moved to certify the class. It is true that in most cases involving a proposed class, it is the plaintiffs who move for class certification. 5 James Wm. Moore, *Moore's Federal Practice* § 23.61[6][a] at 23–280.2 (3d ed.2002). However, under Fed.R.Civ.P. 23(c)(1), either party may ask the court to determine whether class certification is appropriate. *Cook County College Teachers Union v. Byrd,* 456 F.2d 882, 885 (7th Cir.1972); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1785 at 89 (2d ed.1986); *see also Bieneman v. City of Chicago,* 838 F.2d 962, 964 (7th Cir.1988) (if neither party moves, court must determine class certification on its own). Although there is nothing procedurally improper about defendants' motion, I conclude that it is mislabeled. Generally, in a motion to strike under Fed.R.Civ.P. 12(f), a party argues that portions of the pleadings are facially improper. *See Codest Engineering v. Hyatt International Corp.,* 954 F.Supp. 1224, 1228 (N.D.Ill.1996) (motion to strike granted only if it is impossible that opposing party could prove set of facts consistent with its allegation). However, both parties have cited a number of materials outside the pleadings to support their positions. Accordingly, I will construe defendants' motion as one for denial of class certification under Rule 23(c)(1).

Defendants' motion to deny class certification will be granted in part and denied in part. Because plaintiffs' claims against the individual defendants in their personal capacities are not typical of the claims of other class members, class certification on those claims is not appropriate. With respect to plaintiffs' claims against defendant St. Croix County and defendants Hillstead and Humphrey in their official capacities, I conclude that plaintiffs have satisfied the requirements for class certification under Rule 23(a) and (b)(3). However, if plaintiffs fail to ultimately prove that defendants had a policy or custom regarding strip searches that violated the Fourth Amendment, I will decertify the class and each plaintiff will have to prove liability individually. Furthermore, I will stay a decision whether to certify the issue of damages until liability has been determined.

For the sole purpose of deciding these motions, I find that plaintiffs' complaint fairly alleges the following.

## ALLEGATIONS OF FACT

Plaintiffs David Blihovde, Travis Brecher and Renee Houser are all residents of St.

Croix County, Wisconsin. Defendant Dennis Hillstead is the sheriff for St. Croix County. Defendant Karen Humphrey is the jail captain at the St. Croix County jail. Defendants Kristen Anderson, Terry Larson, Lisa Opel and Shelby Lane are deputy sheriffs at the St. Croix County jail. Defendant Mark Volz is a police officer for the Village of North Hudson, Wisconsin.

On May 5, 1996, the St. Croix County Sheriff's Department adopted a new policy regarding strip searches. It provided in part: "In order to ensure the highest level of security, the St. Croix County Jail staff will perform strip searches on all persons entering the jail." Deputy sheriffs were trained under this policy to strip search all arrestees booked into the jail. This policy remained in effect until February 27, 2001. Defendant Humphrey wrote the policy.

In November 1996, plaintiff Renee Houser was arrested for issuing two worthless checks. She was placed in a holding cell at the St. Croix County jail for several hours. She was then handcuffed, shackled and booked. In the jail's "strip search room," plaintiff Houser was made to remove all of her clothing and to uncover her buttocks, genitals and breasts.

In December 1998, plaintiff David Blihovde was arrested by defendant Mark Volz for driving while intoxicated. Volz transported Blihovde to the St. Croix County jail and booked him. Plaintiff Blihovde was instructed to remove all of this clothes in the hallway in front of both male and female officers. Blihovde complied, but he asked why he was required to stand naked in the hallway. One of the jailers responded, "To show what we can do to you if you don't cooperate." Plaintiff received a jail uniform and waited in a holding cell until he could arrange to be picked up.

In April 1999, Travis Brecher was stopped for having a broken taillight and then arrested when he produced a revoked driver's license. At the St. Croix County jail, Brecher was booked and escorted to a small room. He was required to remove all his clothes and bend over and touch his toes so that a visual rectal search could be performed.

## OPINION

### A. *Legal Standard for Making Class Determination*

Plaintiffs contend that because defendants moved to strike plaintiffs' class allegations, defendants have the burden of proving that class certification is inappropriate as a matter of law. Generally, in a motion for class certification, the plaintiffs have the burden of demonstrating that they meet the requirements of Fed.R.Civ.P. 23. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993); *Davis v. Cash for Payday, Inc.*, 193 F.R.D. 518, 521 (N.D.Ill.2000). However, citing *Bessette v. Avco Financial Services, Inc.*, 279 B.R. 442, 450 (D.R.I.2002), and 2 Herbert Newburg & Alba Conte, *Newberg on Class Actions* § 7.22 at 7–75 (3d ed.1992), plaintiffs assert that the general rule does not apply when the defendant makes the motion rather than the plaintiff. In *Bessette*, the court applied the standard under Fed. Civ. P. 12(b)(6) when the defendant moved to strike the plaintiffs' class allegations. Thus, the court concluded that the question was whether the plaintiffs had "properly allege[d] facts sufficient to make out a class." *Bessette*, 279 B.R. at 450. Similarly, Newburg states: "[W]here defendants contend that certification is precluded as a matter of law before the filing of the certification motion, defendants bear the burden of demonstrating that on the face of the complaint, class certification is impossible." 2 Newburg & Conte, *Newburg on Class Actions* § 7.22 (3d ed.1992); *see also Bryant v. Food Lion, Inc.*, 774 F.Supp. 1484, 1495 (D.S.C.1991) (when defendants contend that class certification is precluded as matter of law, defendants bear burden of demonstrating it will be impossible for plaintiffs to prove facts supporting class certification).

I do not dispute the legal accuracy of these authorities' statements, but I disagree with plaintiffs that they support the view that the burden shifts to defendants simply because they rather than plaintiffs filed a motion for a class determination. If the burden rested with the first filer of a motion, then if neither party made a motion, the *court* would have

614

the burden to show that the Rule 23 requirements have been met when it makes a class determination on its own motion. However, the case law is clear that the burden remains with the party seeking class certification regardless who moves the court to make the determination. *See Byrd,* 456 F.2d at 885. *Bessette* and *Bryant* merely stand for the unremarkable proposition that when there has been no discovery and the defendants challenge class certification on the basis of the allegations in the complaint only, the proper standard is the same as a motion to dismiss for failure to state a claim.

■ As noted above, both parties have cited materials outside the pleadings. Although plaintiffs suggest that more discovery would be desirable, they also argue that "even the preliminary record" justifies certification. Plts.' Br., dkt. # 24, at 3. Some discovery is appropriate and often necessary before the court can make a class determination, *see Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672 (7th Cir.2001), but extensive and time-consuming discovery is not encouraged if it is unnecessary. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 896 (7th Cir.1981). "Ordinarily, affidavits and counter-affidavits, together with legal briefs, are sufficient to ready these issues for disposition by the court." 2 Newberg & Conte, *Newberg on Class Actions* § 7.08, at 7–26 (3d ed.1992). A district court can make class certification conditional and it can decertify the class at any time before a decision on the merits. Fed.R.Civ.P. 23(c)(1); *Eggleston,* 657 F.2d at 896; *see also General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). Thus, I conclude that a class determination can be made on the current record and that plaintiffs have the burden to show that class certification is appropriate.

### B. *Rule 23 Requirements*

■ Before a court may certify a class, the plaintiffs must satisfy the requirements of both Rule 23(a) and (b). *Rosario v. Livadi-tis,* 963 F.2d 1013, 1017 (7th Cir.1992). Rule 23(a) sets forth four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequate representation. *In re Copper Antitrust Litigation,* 196 F.R.D. 348, 353 (W.D.Wis.2000). These requirements are intended to limit class claims "to those fairly encompassed by the named plaintiff's claims." *General Telephone Co. of Northwest v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Rule 23(b) lists three types of class actions that may be maintained; plaintiffs must demonstrate that they qualify for at least one of these.

■ In addition to the express requirements of Rule 23, courts have recognized two implicit ones. First, the named class representatives must have standing, that is, they must be members of the class they propose to represent. *Rozema v. Marshfield Clinic,* 174 F.R.D. 425, 432 (W.D.Wis.1997) (citing 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure,* § 1785.1, at 139 (2d ed.1986)). Second, the definition of the proposed class must be "precise, objective and presently ascertainable." *Copper,* 196 F.R.D. at 353. Class definition is critical because it "identifies the persons (1) entitled to relief, (2) bound by the judgment, and (3) entitled to notice in a Rule 23(b)(3) action." *Manual for Complex Litigation* § 30.14 (3d ed.1999).

### 1. *Ascertainability*

Plaintiffs propose the following class definition: "All persons arrested for misdemeanors or ordinance offenses unrelated to weapons or illegal drugs and strip searched at the St. Croix County Jail between August 6, 1996, and February 27, 2001." In their brief, plaintiffs qualify this definition by limiting it to United States citizens.

■ The proposed class members' standing is not in dispute: plaintiffs allege that each class member was subjected to a strip search at the St. Croix County jail. However, defendants argue that the identity of the class members is too difficult to ascertain for at least two reasons. First, defendants contend that the meaning of "strip search" is broad and subjective; an inquiry into the

merits of the case will be necessary to determine whether a class member was strip searched. Similarly, defendants argue that the court will have to determine whether a search was justified by "a legitimate and a substantial need to prevent the entry of weapons or contraband." Dfts.' Reply Br., dkt. # 37, at 7.

I can dispose summarily of defendants' second argument. Plaintiffs' proposed class includes *all* persons strip searched who were arrested for misdemeanor or ordinance offenses unrelated to weapons or illegal drugs. Therefore, a potential class member does not have to consider whether his or her strip search was *actually* lawful before ascertaining whether he or she is included in the class. Defendants' argument is more properly analyzed as one challenging the commonality of the claims of the class members. I will address that issue below in context of the requirements under Rule 23(a)(2) and (b)(3).

■ With regard to defendants' first argument, I note first that defendants have not cited any case in which a court rejected a request for class certification on the ground that the meaning of "strip search" is amorphous or too subjective. My own research has revealed none. As defendants themselves point out, the Court of Appeals for the Seventh Circuit has defined a strip search as "a visual inspection of a naked [individual] without intrusion into the person's body cavities." *Peckham v. Wisconsin Dept. of Corrections,* 141 F.3d 694, 695 (7th Cir.1998); *see also Mary Beth G. v. City of Chicago,* 723 F.2d 1263 (7th Cir.1983) (visual inspection of plaintiffs' genitals, breasts and buttocks was strip search even though plaintiffs remained partially clothed). The policy of the St. Croix Sheriff's Department is substantially similar: "A search in which an inmate or arrested person['s] genitals, pubic area, buttocks or anus, or female breasts is uncovered and either is exposed to view or is touched by the person conducting the search." Aff. of Karen Humphrey, dkt. # 16, Ex. A, at 1. No complex analysis is needed to determine whether a person's genitals were visually inspected. Although it is true that being "touched" by an officer goes beyond what is included in the court of appeals' definition,

this does not suggest that a tactile inspection is no longer a "strip search," but only that a physical intrusion into a body cavity implicates a greater privacy interest than a visual inspection. To the extent that the department policy suggests that some arrestees were visually inspected while others were searched more intrusively, this again is an issue of commonality; it is not an issue of proper class definition.

Defendants also suggest that to determine whether an arrestee was strip searched, the court will have to inquire into the specific intent of the officers involved in each case. For example, defendants suggest that unless a visual inspection was performed "for purposes of harassment," then no search occurred. The cases cited by defendants do not support this proposition. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), hold only that negligent conduct does not give rise to a cause of action under the due process clause; they do not hold that an officer violates the Constitution only when he or she intends to harass. Similarly, *Canedy v. Boardman,* 91 F.3d 30 (7th Cir.1996), and *Johnson v. Phelan,* 69 F.3d 144 (7th Cir. 1995), do not hold that "[i]nmates do not have a constitutional right not to be seen nude," as defendants assert. Dfts.' Br., dkt. # 17, at 9. Rather, in *Johnson,* 69 F.3d at 145, the court noted that "[o]bservation is a form of search." In both cases the courts held only that an inmate's right not to be seen naked can be overcome by important interests of the prison. *Canedy,* 91 F.3d at 33–34; *Johnson,* 69 F.3d at 145–46; *see also Peckham,* 141 F.3d at 697 (rejecting interpretation of *Canedy* and *Johnson* that Fourth Amendment does not apply to prisoners). Moreover, the applicability to this case of *Canedy* and *Johnson* is questionable because those cases addressed the rights of convicted prisoners rather than pre-trial detainees. *See Kraushaar v. Flanigan,* 45 F.3d 1040, 1045 (7th Cir.1995) (reasonable suspicion required to strip search person arrested for driving under influence).

Thus, I agree with plaintiffs that the subjective purpose of the officers is not relevant

in determining whether class members were strip searched. To the extent that a showing of intent is required, it is only the intent *to search* and not the intent to search *for a particular reason* that is important. *See Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control.... [T]he Fourth Amendment addresses 'misuse of power' ... not the accidental affects of otherwise lawful conduct.") Strip searches are not the sort of conduct that are performed "accidentally." It is safe to assume, as all other courts considering the issue have, that the class members were searched intentionally.

Although I reject defendants' assertion that the term "strip search" does not have a clear *legal* meaning, I agree that more precise language would aid potential members of the class in determining whether they are in fact members. In other cases in which courts have certified classes challenging alleged strip search policies, the class definition has avoided use of the term "strip search" and instead used more specific language. *See, e.g., Eddleman v. Jefferson County*, No. 95–5394, 1996 WL 495013, at *2 (6th Cir. Aug.29, 1996) (defining class in part as individuals who "were required by the Defendant to remove their clothing for visual inspection of all or part of their exposed bodies"); *Doan v. Watson*, No. 99–4–C–B/S, 2000 U.S. Dist. Lexis 8595, at *8 (S.D.Ind. March 4, 2000) (same). Therefore, I will amend the class definition in the following manner: "All United States citizens arrested for misdemeanors or ordinance offenses unrelated to weapons or illegal drugs who were required by officers at the St. Croix County jail to remove their clothing for visual inspection of their genitals, pubic area, buttocks, or breasts between August 6, 1996, and February 27, 2001."

#### 2. *Numerosity*

■ Rule 23(a)(1) requires a showing that the number of members in the proposed class is so large as to make joinder "impracticable." Relying on arrest records and an investigation report, plaintiffs assert that there are at least 3,000 members in the proposed class. This is sufficient to satisfy the numerosity requirement. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 662–63 (N.D.Ill.1996). Defendants do not challenge this conclusion.

#### 3. *Commonality*

■ Rule 23(a)(2) requires a showing that there are questions of law or fact common to the class. This is a permissive standard. *Markham v. White*, 171 F.R.D. 217, 222 (N.D.Ill.1997). Courts have held that a single common issue is sufficient to satisfy this requirement. *See, e.g., Wagner v. NutraSweet Co.*, 170 F.R.D. 448, 451 (N.D.Ill. 1997); *Gomez v. Illinois State Bd. of Education*, 117 F.R.D. 394, 399 (N.D.Ill.1987); *see also Rozema*, 174 F.R.D. at 438 ("In order to satisfy the commonality requirement of Rule 23(a)(2), plaintiffs need show only that one common question exists.")

The most salient common issue alleged by plaintiffs is that each class member was strip searched in accordance with an unconstitutional policy. Defendants do not dispute plaintiffs' assertion that the existence and constitutionality of the county's policy are common questions; instead, they point to differences that may arise in establishing an individual class member's right to recover, such as assessing the reasonableness of each search and determining damages. Although these are important considerations, they do not demonstrate that there are no common questions of law or fact. Rather, they are more appropriately addressed in the context of the requirements of Rule 23(b).

#### 4. *Typicality*

■ "The commonality and typicality requirements of Rule 23(a) tend to merge." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *see also Rosario*, 963 F.2d at 1018 ("The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality."). The purpose of both requirements is to "ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." *Mace*

*v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir.1997). However, in considering the typicality requirement, a court asks specifically whether the class representatives have suffered the same kind of injury as other members of the class. 1 Newberg and Conte, *Newberg on Class Actions* § 2.07, at 2–48 (3d ed.1992). A named plaintiff's claim is typical if it is based on the same legal theory and arises from the same course of conduct alleged by the other members of the proposed class. *Retired Chicago Police Ass'n*, 7 F.3d at 596–97; *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). This is so even though there are factual differences between her claim and the claims of other class members. *De La Fuente*, 713 F.2d at 225. "Typicality under Rule 23(a)(3) should be determined with reference to the [defendant's] actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet*, 95 F.3d 527, 534 (7th Cir.1996).

■ All of the named plaintiffs allege that they were forced by officers at the St. Croix County jail to remove their clothing and submit to a visual inspection pursuant to a county policy to strip search all arrestees that were booked in the jail. Nevertheless, defendants argue that plaintiffs' claims cannot be typical because of the "complex course of conduct engaged in by the defendants over a long period of time." Dfts.' Br., dkt. # 17, at 15.

■ First, plaintiffs are not barred from maintaining a class action simply because the class period spans several years. *See John Does 1–100 v. Boyd*, 613 F.Supp. 1514, 1527 (D.Minn.1985) (concluding that named plaintiffs satisfied typicality requirement even though class included detainees who had been strip searched over eight-year period). The question is not whether plaintiffs' claims are close in time but whether they arise from the same course of conduct. *Retired Chicago Police Ass'n*, 7 F.3d at 596–97. Furthermore, defendants do not make clear how their course of conduct was "complex." The case defendants cite in support of this proposition involved an alleged conspiracy by tobacco companies to hide the dangers of ciga-

rette smoking. *Insolia v. Philip Morris Inc.*, 186 F.R.D. 535 (W.D.Wis.1998). Although strip searches vary, it cannot be argued that they rise to the level of complexity of a "campaign of misinformation designed to conceal and distort the truth about the adverse health effects of smoking and the addictive nature of nicotine." *Id.* at 544. Of course, there will always be at least some factual differences among the circumstances of each plaintiff. However, plaintiffs allege that in each case, defendants acted pursuant to a policy that called for indiscriminate searches. If this allegation is true, then the named plaintiffs would be similarly situated to the other members of the class.

■ The operative word here is "if." Defendants deny that there was a uniform policy to strip search all arrestees. If there was no policy, then there would be no "course of conduct" for which the county could be held liable. *See White v. City of Markham*, 310 F.3d 989, 998 (7th Cir.2002) (no municipal liability under § 1983 unless a policy or custom of the entity was the "moving force" behind the constitutional deprivation). The only remaining claims would be those against the officers performing the searches. Because different officers were involved in the booking process for the various class members, the named plaintiffs could not argue that their claims were typical of those of the other class members.

■ In previous years, this dispute would not have presented a problem because the court would have assumed that the plaintiffs' allegations were true. *See, e.g., Rozema*, 174 F.R.D. at 431. However, the court of appeals has held recently that, in making a determination regarding class certification, district courts may not assume that the class allegations in the plaintiffs' complaint are true. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir.2001). Rather, "[b]efore deciding whether to allow a case to proceed as a class action ... a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 676. Further, when these questions overlap with the merits of the case, "the judge must make a preliminary inquiry into the merits." *Id.*

In support of their allegation that defendants had a policy of strip searching all booked arrestees, plaintiffs refer first to the written policy itself, which begins with this general statement: "In order to ensure the highest level of security, the St. Croix County Jail staff will perform strip searches on all persons entering the jail. Jail staff personnel who will be performing such searches will all be correctional officers, who are the same sex as the person being searched." I agree with plaintiffs that the policy statement appears clear and unambiguous. However, defendants argue that the general policy statement is misleading and that the "real" policy of the county is reflected in Part C of the policy, which provides in part: "Strip searches will be conducted on the following inmates: ... Any arrest for violation of a state law or local ordinance, if there is probable cause to believe the person is concealing a weapon or evidence of the offense for which the person is being detained." Aff. of Karen Humphrey, dkt. # 16, Ex. A. Although the cited passage is more specific, as plaintiffs point out, it does not limit the authority of officers to perform strip searches in the absence of probable cause.

■ Furthermore, plaintiffs do not rely solely on the language of the policy. They also cite an investigation report prepared by the Pierce County Sheriff's Department at the request of the St. Croix County Sheriff's Department after a teenage girl complained about being strip searched. *See* Aff. of Vincent Moccio, dkt. # 25, Ex. A. The report cites two deputy sheriffs at the St. Croix County jail who stated that "everybody" was strip searched before the policy was changed in 2001. In addition, defendant Kristen Anderson stated that she had been "trained and told" that "everyone" who was booked in the jail should be strip searched. The report cites defendant Dennis Hillstead (the sheriff of St. Croix County) as confirming that officers were interpreting the policy as requiring strip searches for everyone. Even when there is no express policy, a municipality may be liable when there is a "custom" of unconstitutional conduct. *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ Defendants object to any consideration of the report because plaintiffs have not properly authenticated it. (The report is attached to an affidavit of plaintiffs' attorney, who presumably does not have personal knowledge of the report's contents.) However, defendants do not contend that the report is false or manufactured by plaintiffs. Although it is true that the report would not be admissible at trial without the testimony of an individual with personal knowledge of the underlying facts, defendants cite no case law requiring that form of proof at the class certification stage. It is sufficient at this stage of the proceedings that the report is the *kind* of evidence that would be admissible if properly authenticated. *Cf. Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920–21 & n. 2 (7th Cir.1994) (in opposing motion for summary judgment, nonmovant "need not tender evidence in a form that would be admissible at trial" so long as it is "a *kind* [of evidence] admissible at trial").

■ Defendants also challenge any assertion that the report demonstrates that there was a policy of strip searching all arrestees. Defendants note that the report was prepared from interviews with only two officers and that the investigation "was not intended to determine whether all officers [followed] a certain procedure in searching arrestees." Dfts.' Reply Br., dkt. # 37, at 5. In addition, defendants cite the affidavit of one deputy sheriff, defendant Lisa Opel, in which she avers that she "did not conduct strip searches of the class members as they are now defined absent probable cause." Aff. of Lisa Opel, dkt. # 33, at ¶ 2. Defendant Opel avers that in the absence of probable cause she would monitor "change overs" from street clothing to jail uniforms without requiring the arrestee to remove undergarments. *Id.* at ¶¶ 4–5.

■ Even assuming defendant Opel's averments are true, they do not establish the absence of any policy or custom. Defendants cite no authority holding that a custom does not exist if there is even one exception to the rule. Rather, officer conduct is a "custom" within the meaning of § 1983 if it is a "widespread practice that, although not authorized

by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir.2002). Further, although the investigation report does not establish conclusively that a policy or custom of indiscriminate strip searching existed, it is unnecessary to make such a determination, particularly at this stage of the proceedings. *Szabo,* 249 F.3d at 676, requires only a "preliminary inquiry" into the merits when they overlap with Rule 23 requirements; it does not require a court to make findings of fact. I am satisfied that plaintiffs have made an adequate showing of the typicality of their claims against the county and against defendants Hillstead and Humphrey in their official capacities. Whether plaintiffs can ultimately prove the existence of a policy or custom is an issue better resolved at trial or by a motion for summary judgment. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (class determination should not be made on basis of court's view of strength of plaintiffs' claim); *Rozema v. Marshfield Clinic,* 176 F.R.D. 295, 304 (W.D.Wis.1997).

■ However, regardless whether a policy or custom existed, I cannot conclude that plaintiffs' claims against the individual officers in their personal capacities are typical of other members of the class. As noted above, many officers were involved in searching arrestees and most of them will be different from the ones who searched the named plaintiffs. Thus, plaintiffs' claims against any one officer cannot be typical of the claims of other class members. It is noteworthy that plaintiffs have cited no case law in which a court granted class certification in a civil rights action with respect to claims against the individual officers performing the strip searches. Defendants' motion to deny class certification will be granted with respect to the claims against defendants Mark Volz, Kristen Anderson, Terry Larson, Lisa Opel, Shelby Lane and John and Jane Does 1–30.

5. *Adequacy of Representation*

■ "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625–626, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citations and internal quotations omitted). In addition, class counsel must be qualified to conduct the proposed litigation. *Rozema,* 174 F.R.D. at 439.

In their initial brief, defendants argue that the named plaintiffs are not adequate representatives because, unlike other class members, they are United States citizens and were arrested for crimes that do not give rise to reasonable suspicion. As already noted, plaintiffs have amended their class definition to include only pre-trial detainees arrested for minor offenses unrelated to illegal drugs or weapons. They have also represented that only U.S. citizens will be included in the class. As a result, defendants' concerns regarding the named plaintiffs are moot.

Counsel for plaintiffs has submitted an affidavit averring that his law firm, Robins, Kaplan, Miller and Ciresi, LLP, has substantial experience in class action litigation. If claims against the individual officers are excluded, there are no identified class conflicts. I am satisfied that plaintiffs have satisfied the requirement of adequate representation.

C. *Predominance and Superiority under Rule 23(b)(3)*

■ Plaintiffs must satisfy at least one of the subsections of Rule 23(b). Because plaintiffs are seeking monetary damages rather than injunctive relief, they focus on subsection (b)(3), which is appropriate if "questions of law or fact common to members of the class predominate over any questions affecting only individual members" and if "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In making this determination, the court should consider: (1) the interest of class members in controlling the prosecution of their own claims; (2) the existence of other pending litigation related to the same controversy; (3) the desirability of concentrating the claims in one forum;

and (4) the difficulty of managing the class. Fed. R. Civ. P 23(b)(3). The Supreme Court has summarized this provision as permitting class certification when "a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615, 117 S.Ct. 2231 (citing Fed. R.Civ.P. 23 Advisory Committee Notes); *see also Mejdrech v. Met–Coil Systems Corp.*, 319 F.3d 910, 911 (7th Cir.2003) ("[C]lass action treatment is appropriate and permitted by Rule 23 when the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury.")

 The requirements of Rule 23(b)(3) overlap the commonality requirements of Rule 23(a)(2). 1 Newburg & Conte, *Newberg on Class Actions* § 4.22, at 4–78 (3d ed.1992). The difference is that, under Rule 23(b)(3), plaintiffs must do more than demonstrate the existence of common questions of law or fact; rather, they must show that those common questions "predominate" over individual ones. *Amchem*, 521 U.S. at 623–24, 117 S.Ct. 2231 (predominance requirement of Rule 23(b)(3) is "more stringent" and "far more demanding" than commonality requirement of Rule 23(a)(2)). However, the determination whether common questions predominate does not consist of a mechanical counting of the issues to see whether common or individual questions are more numerous. Rather, "the proper standard under Rule 23(b)(3) is a pragmatic one." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778, at 528 (2d ed.1986). Common issues need not be dispositive of the entire suit. *McKenzie v. City of Chicago*, 175 F.R.D. 280, 288 (N.D.Ill.1997). "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." I Newburg & Conte, *Newberg on Class Actions* § 4.25, at 4–84 (3d ed.1992). The basic question is "whether proposed classes are sufficiently cohesive to warrant

adjudication by representation." *Amchem*, 521 U.S. at 623, 117 S.Ct. 2231.

 Defendants assert several reasons why plaintiffs have not met the requirements of Rule 23(b)(3). They argue that liability cannot be established uniformly for the individual defendants because they were not personally involved in each arrest, that damages will vary for each plaintiff and that an individualized inquiry will have to be performed for each search to determine whether it was reasonable. Each of these concerns is legitimate and demonstrates the practical difficulties inherent in almost all class actions. However, after careful consideration, I have concluded that the difficulties of bringing this suit as a class action do not outweigh the benefits. The proposed class is sufficiently cohesive to satisfy Rule 23(b)(3).

First, defendants' argument regarding varying defenses no longer applies. I have concluded that the claims against the individual defendants in their personal capacities are not appropriate for class certification. Therefore, the liability of individual defendants will not have to be litigated on a classwide basis.

Second, the case law suggests that when the class is challenging a uniform policy, the validity of that policy predominates over individual issues and class certification is appropriate. *Falcon*, 457 U.S. at 147 n. 20, 102 S.Ct. 2364 ("Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees."); *Rosario*, 963 F.2d at 1018 (certification was appropriate when plaintiffs alleged that defendant had "an ongoing scheme to defraud and deceive prospective students"); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir.1986) (district court abused its discretion in refusing to certify class under Rule 23(b)(3) when plaintiffs alleged that defendant had "discriminatory system" in making promotions); *Abramovitz v. Ahern*, 96 F.R.D. 208, 216–18 (D.Conn.1982) (granting motion to certify class under Rule 23(b)(3) when plaintiffs alleged that defendants had "program" of conducting warrantless searches).

Defendants concede that in the primary case they rely on to support denial of class certification, the plaintiffs did not allege that they were strip searched in accordance with a uniform policy. *See Klein v. DuPage County,* 119 F.R.D. 29 (N.D.Ill.1988). In cases in which plaintiffs did challenge a strip search policy, several courts have found class certification appropriate, despite the presence of some factual variation in the claims. *See, e.g., Eddleman v. Jefferson County,* No. 95–5394, 1996 WL 495013 (6th Cir. Aug. 29, 1996); *Maneely v. City of Newburgh,* 208 F.R.D. 69 (S.D.N.Y.2002); *Mack v. Suffolk County,* 191 F.R.D. 16 (D.Mass.2000); *Doan v. Watson,* No. NA 99–4–C–B/S, 2000 U.S. Dist. Lexis 8595 (March 4, 2000); *Gary v. Sheahan,* No. 96 C 7294, 1999 WL 281347 (N.D.Ill. March 31, 1999); *Wilson v. Tinicum Township,* No. CIV. A. 92–6617, 1993 WL 280205 (E.D.Pa. July 20, 1993); *Doe v. Calumet City, Illinois,* 128 F.R.D. 93 (N.D.Ill. 1989); *Smith v. Montgomery County, Maryland,* 573 F.Supp. 604 (D.Md.1983); *but see Bledsoe v. Combs,* No. NA 99–153–C H/G, 2000 WL 681094, *5 (S.D.Ind. March 14, 2000) (denying certification for proposed class plaintiffs challenging strip search policy because "highly individualized inquiries would be needed. to determine whether a person is a member of the proposed class and to determine damages"); *Augustin v. Jablonsky,* No. 99CV3126(DRH)(ARL), 2001 WL 770839, *13 (E.D.N.Y. March 8, 2001) (denying class certification in strip search case after concluding that individualized questions predominated over common ones).

▆▆▆ Third, although it is true that there may be some variation in the class members' amount of damages, the cases are legion in which courts have rejected arguments that differences in damages among the class members should preclude class certification. *Mayer v. Mylod,* 988 F.2d 635, 640 (6th Cir.1993); *De La Fuente,* 713 F.2d at 233; *Maneely,* 208 F.R.D. at 77; *Rozema,* 174 F.R.D. at 442; *Patrykus v. Gomilla,* 121 F.R.D. 357, 361 (N.D.Ill.1988); *Markham,* 171 F.R.D. at 224; *Franklin v. City of Chicago,* 102 F.R.D. 944, 949 (N.D.Ill.1984); *In re Asbestos School Litigation,* 104 F.R.D. 422, 432 (E.D.Pa.1984); *Abramovitz,* 96 F.R.D. at 217–18; *see also* 1 Newberg & Conte, *New-*

*berg on Class Actions* § 4.26 (3d ed.1992) (arguing that varying damages should not be the basis for denying class certification). When damages vary, the court may bifurcate the lawsuit so that the defendant's liability can be determined initially. 1 Newberg & Conte, *Newberg on Class Actions* § 4.14 (3d ed.1992); *see also Mejdrech,* 319 F.3d at 911 ("If there are genuine common issues, issues identical across all claimants ... then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings."). After liability is determined, the court can reconsider the issue, determining whether another class should be certified under Rule 23(b)(3) for the purpose of resolving monetary damages in a second phase. *See Denberg v. United States Railroad Retirement Bd.,* 696 F.2d 1193, 1207 & n. 7 (7th Cir.1983) (noting that partial class certification to determine liability only is appropriate under Rule 23(c)(4)). If the case proceeds this far, the Seventh Amendment concerns identified in *In re Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293 (7th Cir.1995), will not be implicated because no issue litigated in the first phase will be revisited in the second phase. *See Orlowski v. Dominick's Finer Foods,* 172 F.R.D. 370, 375 (N.D.Ill.1997). Accordingly, I will stay a decision whether to certify the issue of damages until after liability is determined.

▆▆▆ Defendants' strongest argument is that class certification is inappropriate because the court will have to undertake a separate inquiry for each class member in order to determine whether a strip search was unreasonable and thus unconstitutional. I agree with defendants that even if the county's policy or custom violates the Fourth Amendment, defendants may avoid liability to particular class members if an officer had reasonable suspicion to believe that a class member was concealing weapons or contraband. *See Kraushaar,* 45 F.3d at 1045; *Mary Beth G.,* 723 F.2d at 1273; *see also Maneely,* 208 F.R.D. at 77–78 (use of unconstitutional strip search policy does not automatically render each search unconstitutional). However, I agree with the courts in

*Mack* and *Doe* that if plaintiffs can establish that defendants had an unconstitutional strip search policy or custom, defendants will have the burden to show that a particular search was reasonable. *Mack,* 191 F.R.D. at 24; *Doe v. Calumet City, Illinois,* 754 F.Supp. 1211, 1220 (N.D.Ill.1990). This conclusion is consistent with the method of proof in other class action cases in which the plaintiffs allege that the defendants engaged in a pattern of unlawful behavior. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (when plaintiffs in discrimination action prove that defendants engaged in pattern or practice of discrimination, burden of persuasion shifts to defendants to prove individual actions were not discriminatory); *see also Hervey v. City of Little Rock,* 787 F.2d 1223, 1228 (8th Cir.1986) (applying pattern or practice method of proof to claim brought under § 1983); *Anderson v. Cornejo,* 199 F.R.D. 228, 240–41 (N.D.Ill.2000) (assuming that pattern and practice method of proof applies to class actions involving strip search policies). Thus, individual determinations of liability would have to be made only when defendants have evidence that a particular search was justified by reasonable suspicion. Because plaintiffs' proposed class includes only those arrested for misdemeanors or ordinance violations that are unrelated to weapons or illegal drugs, it is unlikely that such evidence will exist with respect to many class members.

■ It is also important to note that the manageability of the class is only one of several considerations under Rule 23(b)(3). *See Maneely,* 208 F.R.D. at 78 ("[I]t would be improper to let manageability concerns overwhelm the predominance decision.") The Supreme Court has recognized that the purpose of Rule 23(b)(3) is to vindicate " 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.' " *Amchem,* 521 U.S. at 617, 117 S.Ct. 2231 (quoting Fed.R.Civ.P. 23 Advisory Committee Notes). As a number of courts have recognized in other strip search cases, damages for each class member are likely to be relatively small. *See Mack,* 191 F.R.D. at 25; *Smith,* 573 F.Supp. at 613 ("A class action is also the

fairest means to settle this controversy since it is unlikely that most class members would pursue these claims on their own.") Although strip searches are "demeaning, dehumanizing, undignified, unpleasant, embarrassing, repulsive, signifying degradation and submission," *Mary Beth G.,* 723 F.2d at 1272, recovery can be limited because they are usually not accompanied by physical injury.

Many of the class members in this case may not even be aware that they have a claim and the statute of limitations has already lapsed for some individuals arrested after the alleged policy or custom began. *See Wudtke v. Davel,* 128 F.3d 1057, 1061 (7th Cir.1997) (actions brought under § 1983 in Wisconsin have six-year statute of limitations). Under these circumstances, the interest of individual class members in controlling the litigation is small. Therefore, class litigation is the best way to insure the class members' rights are vindicated. *See Frahm v. Equitable Life Assurance Society of United States,* 137 F.3d 955, 957 (7th Cir.1998) (class certification is appropriate in cases involving "person-specific contentions" only when stakes are so small that they do not justify individual suits); *Mace,* 109 F.3d at 344 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") Moreover, because of the potentially large number of individuals allegedly strip searched in violation of the Fourth Amendment, a class action provides the most feasible and efficient method of determining liability.

In sum, I conclude that plaintiffs have satisfied the requirements of Rule 23(a) and (b)(3) with respect to their claims that defendants St. Croix County, Dennis Hillstead and Karen Humphrey had an unconstitutional policy or custom of strip searching all arrestees that were booked in the jail. Defendants' motion to deny class certification will be denied with respect to these claims and plaintiffs will be allowed to proceed as a class for the purpose of determining liability. However, if plaintiffs fail to prove that there was an unconstitutional policy or custom, I will decertify the class and require plaintiffs

to prove liability separately. In addition, because plaintiffs' claims against defendants Mark Volz, Kristen Anderson, Terry Larson, Lisa Opel, Shelby Lane and John and Jane Does 1–30 are not typical of other members of the class, defendants' motion to deny certification will be granted with respect to those claims.

## ORDER

IT IS ORDERED that

1. Defendants' motion to deny class certification under Rule 23(b)(3) is GRANTED with respect to plaintiffs' claims that defendants Mark Volz, Kristen Anderson, Terry Larson, Lisa Opel, Shelby Lane and John and Jane Does 1–30 violated plaintiffs' Fourth and Fourteenth Amendment rights.

2. Defendants' motion is DENIED with respect to plaintiffs' claims that they were strip searched pursuant to an unconstitutional policy or custom of defendants St. Croix County, Dennis Hillstead and Karen Humphrey. Plaintiffs may proceed as a class on these claims on the issue of liability.

3. Defendants' motion is STAYED with respect to the issue of damages until liability has been determined.

4. The class is defined as follows: "All United States citizens arrested for misdemeanors or ordinance offenses unrelated to weapons or illegal drugs who were required by officers at the St. Croix County jail to remove their clothing for visual inspection of their genitals, pubic area, buttocks, or breasts between August 6, 1996, and February 27, 2001."

5. Pursuant to Fed.R.Civ.P. 23(c)(2), plaintiffs are directed to prepare a proposed notice to all members of the class for the court's approval. After the proposed notice has been filed with the court and served on defendants, defendants may present their objections or suggestions for changes.