REVISED APRIL 9, 2002
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-31032

_____


In Re: In the Matter of GRAHAM OFFSHORE, INC., as owner and
GRAHAM MARINE, INC., as owner pro hac vice of the
vessel M/V Miss Paula, her engines, tackle,
appurtenances, furniture, etc, praying for Exoneration
from or Limitation of Liability.


GRAHAM OFFSHORE, INC.; GRAHAM MARINE, INC.,

Petitioners-Appellants,

versus

EPOCH WELL LOGGING; INDUSTRIAL INDEMNITY; JAMES ALLAWAY;
JOCELYN BATES,

Claimants-Appellees,

versus

TEXACO EXPLORATION AND PRODUCTION, INC.; TEXACO, INC.;
TRANSOCEAN OFFSHORE INC.; formerly known as Sonat Offshore
Drilling, Inc.,

Claimants-Appellants.

- - - - - - - - - - - - - - - - -

JAMES D. ALLAWAY,

Plaintiff-Appellee,

and

EPOCH WELL LOGGING; INDUSTRIAL INDEMNITY,

Intervenors-Appellees,

versus

TEXACO, INC.; ET AL

Defendants,

TEXACO INC.; TEXACO EXPLORATION AND PRODUCTION, INC.,

Defendants-Appellants,

and

TRANSOCEAN OFFSHORE VENTURES, INC.,

Defendant-Third Party Plaintiff-Appellant,

versus

GRAHAM MARINE, INC.,

Defendant-Third Party Defendant-Appellant,

and

GRAHAM OFFSHORE, INC.,

Third Party Defendant-Appellant.

- - - - - - - - - - - - - - - - -

JOCELYN N. BATES,

Plaintiff-Appellee,

and

EPOCH WELL LOGGING; INDUSTRIAL INDEMNITY,

Intervenors-Appellees,

versus

TEXACO, INC.; ET AL,

Defendants,

TEXACO, INC.; TEXACO EXPLORATION AND PRODUCTION, INC.,

2

                          Defendants-Appellants,

                               and

        TRANSOCEAN OFFSHORE VENTURES, INC.,

               Defendant-Third Party Plaintiff-Appellant,

                             versus

               GRAHAM MARINE, INC.,

               Defendant-Third Party Defendant-Appellant,

                               and

               GRAHAM OFFSHORE, INC.,

                       Third Party Defendant-Appellant.

                  _____

                         NO. 00-31239
                  _____


  In Re: In the Matter of the Complaint of GRAHAM OFFSHORE, INC.,
     as owner; GRAHAM MARINE, INC., as owner pro hac vice of the
     vessel M/V Miss Paula, her engines, tackle, appurtenances,
  furniture, ect, for Exoneration from or Limitation of Liability.

   GRAHAM OFFSHORE INC., as owner; GRAHAM MARINE, INC., as owner
       pro hac vice of the vessel M/V Miss Paula, her engines,
     tackle, appurtenances, furniture, ect, praying for Exoneration
                from or Limitation of Liability;

                       Petitioners-Appellees-Cross Appellants,

                       EPOCH WELL LOGGING,

                                    Intervenor-Appellee,

      JAMES ALLAWAY; JOCELYN BATES; INDUSTRIAL INDEMNITY,

                                    Claimants-Appellees,
                             versus

                                3

TEXACO EXPLORATION AND PRODUCTION INC.; TEXACO, INC.,

Claimants-Appellants,

versus

TRANSOCEAN OFFSHORE INC., formerly known as Sonat Offshore Drilling Incorporated,

Claimants-Appellant-Cross Appellee.

- - - - - - - - - - - - -

JAMES D. ALLAWAY,

Plaintiff-Appellee,

EPOCH WELL LOGGING; INDUSTRIAL INDEMNITY,

Intervenors-Appellees,

versus

TEXACO EXPLORATION AND PRODUCTION, INC., TEXACO, INC.,

Defendants-Appellants,

versus

GRAHAM MARINE, INC.,

Defendant-Third Party Defendant-Appellee-Cross Appellant,

GRAHAM OFFSHORE, INC.,

Third Party Defendant-Appellee-Cross Appellant,

versus

TRANSOCEAN OFFSHORE VENTURES, INC.; TRANSOCEAN OFFSHORE, INC.,

Defendants-Third Party Plaintiffs-Appellants-Cross Appellees.

- - - - - - - - - -

JOCELYN N. BATES,

4

                                              **Plaintiff-Appellee,**

                        **EPOCH WELL LOGGING,**

                                              **Intervenor-Appellee,**

                                **versus**

        **TEXACO EXPLORATION AND PRODUCTION, INC.; TEXACO, INC.,**

                                              **Defendants-Appellants,**

                        **GRAHAM MARINE, INC.,**

        **Defendant-Third Party Defendant-Appellee-Cross Appellant,**

                        **GRAHAM OFFSHORE, INC.,**

            **Third Party Defendant-Appellee-Cross Appellant,**

                        **INDUSTRIAL INDEMNITY,**

                                              **Claimant-Appellee,**

                                **versus**

    **TRANSOCEAN OFFSHORE VENTURES, INC.; TRANSOCEAN OFFSHORE, INC.,**

        **Defendants-Third Party Plaintiffs-Appellants-Cross Appellees.**

_____

                **Appeals from the United States District Court
                   for the Eastern District of Louisiana**
_____
                            March 28, 2002

Before DAVIS and JONES, Circuit Judges, and PRADO[*], District Judge.

EDITH H. JONES, Circuit Judge:

_____

    [*]        District Judge of the Western District of Texas, sitting
by designation.

Two former employees of Epoch Well Logging seek compensation for injuries sustained while they were evacuating a drilling rig during Hurricane Danny in July 1997. The dispute centers around the rough voyage of the Miss Paula, a crew boat that ferried personnel from the drilling rig to shore. The injured employees filed claims against the owner of the vessel (Graham Offshore); the vessel's time-charterer (Texaco); and the owner of the drilling rig (Transocean). Graham Offshore filed a maritime limitation action, and Texaco and Transocean filed claims against Graham Offshore.

While all three defendants appealed from a substantial judgment that apportioned damages among them, the Graham Offshore and Texaco appellants settled with appellees while this appeal was pending. In the only remaining portion of the appeal, we conclude that the trial court erred in holding Transocean, the rig owner, liable for errors that were the responsibility of the vessel and, to a lesser extent, the time-charterer.

## I. FACTS AND PROCEDURAL HISTORY

In mid-1997, Texaco Exploration and Production, Inc. ("Texaco") chartered the DF-97, a mobile offshore drilling unit owned by Transocean Offshore Venture, Inc. ("Transocean"), to conduct drilling operations on the Outer Continental Shelf in the Gulf of Mexico. The drilling site was located on the Vioska Knoll, approximately 80 miles south of Mobile, Alabama.

6

As part of this drilling project, Texaco contracted with Epoch Well Logging, Inc. ("Epoch Well") to perform mud logging services on the well. Texaco also chartered a 120-foot crew boat, the Miss Paula, to provide transportation for personnel and equipment to and from the DF-97. The Miss Paula was owned by Graham Offshore, Inc. ("Graham Offshore") and was docked at Venice, Louisiana, at the mouth of the Mississippi River.

Tropical Storm Danny formed in the Gulf of Mexico on July 16, 1997, and was eventually upgraded to a category one hurricane. On July 17, Texaco and Transocean decided that 25 non-essential workers on the DF-97 should be evacuated.[2] Weather reports available on the 17th indicated that Danny was moving in a northeasterly direction and would make landfall the following morning near Houma, Louisiana.

Texaco then contacted Graham Offshore to determine whether the Miss Paula could be dispatched to the DF-97. At approximately 4:00 p.m., the captain of the Miss Paula replied that he could make the voyage, and Texaco ordered him to proceed. After re-fueling, the Miss Paula departed Venice at 5:45 p.m.

Inexplicably, the captain of the Miss Paula did not monitor the path of Hurricane Danny. Although the vessel was equipped with radio and other equipment, the captain relied solely

---

[2] The United States Coast Guard required Texaco to submit an Emergency Evacuation Plan ("EEP"), which will be discussed in more detail below.

7

on a television news broadcast he had seen at 5:00. Consequently, the captain was not aware that the National Weather Service began reporting around 10:00 p.m. that Hurricane Danny had turned sharply to the east and was projected to make landfall near Venice.

The Miss Paula arrived at the DF-97 at 11:00 p.m. and boarded the 25 oil rig workers into the crew boat. Although the Miss Paula was alongside the DF-97 for approximately 30 minutes, the representatives of Texaco and Transocean – who had obtained updated weather information -- did not discuss the hurricane's path with the captain or crew of the Miss Paula.

The Miss Paula began its return trip to Venice around 11:30 and soon encountered heavy rain, strong winds, and rough seas. The vessel was blown off course and ran aground on a sand bar; the captain freed the boat by reversing the engines, thereby causing the boat to lurch violently. The captain then took the Miss Paula to deeper water in the Breton Sound and waited out the storm. The voyage was unpleasant, but the captain and crew reported that the boat never took on water or lost power and that the vessel was not in danger of capsizing or sinking. Miss Paula returned to port in Venice on the afternoon of July 18, after a 15-hour voyage that would have taken no more than 6 hours under normal conditions.

Two employees of Epoch Well -- James Allaway and Jocelyn Bates -- claimed that they were injured during this voyage of the

8

Miss Paula. In March 1998, Graham Offshore filed a liability limitation action under 46 U.S.C. § 181. Allaway and Bates filed actions (which were subsequently consolidated) against Graham Offshore, Texaco, and Transocean. Texaco and Transocean then sought indemnification from Graham Offshore, asserting that Graham Offshore had acted negligently. Epoch Well and Industrial Indemnity intervened to recoup compensation paid to Allaway and Bates pursuant to the Longshore and Harbor Workers Compensation Act ("LHWCA").

The trial was set for December 13, 1999. On December 10, however, the parties agreed to continue the trial and to try the issue of damages before determining liability. As part of this agreement, the defendants pledged to "fund any final judgment [on damages] . . . on the basis of a one-third contribution each" and then to try the issue of liability among themselves in order to determine the ultimate allocation of responsibility for any award for damages. With the consent of all parties, the district court entered an order bifurcating the trial.

In March 2000, the district court conducted a non-jury trial on the issue of damages. The court credited Allaway's testimony that the return trip to Venice was "a voyage from hell" and that Allaway was terrified as he "bounced around" the ship. The court found that Allaway suffered permanent but relatively minor injuries to his right knee, his right shoulder, and back.

9

The court added, though, that the most significant injury suffered by Allaway was psychological. The court found that Allaway, though he had been an offshore oil worker for twenty-five years, suffered from "severe post-traumatic stress disorder" as a result of "the extreme fear and fright he experienced during the fifteen hour voyage aboard the Miss Paula."

The court found that Jocelyn Bates suffered minor injuries to her shoulder, arm, and wrist. The court noted that Bates's traumatic experience prevented her from taking assignments that required her to travel offshore by boat. Otherwise, she suffered from no serious psychological conditions that interfered with her daily life.

The district court entered judgment on damages, awarding $765,217 to Allaway and $81,068 to Bates. The court also entered judgments for the intervenors, Epoch Well and Industrial Indemnity, in the amounts of $85,897 (against Allaway) and $2,790 (against Bates) for compensation paid to the claimants under the LHWCA. Limitation of liability became a moot point, inasmuch as the vessel is worth more than the combined judgments.

In its order awarding damages, the district court announced that Graham Offshore, Texaco, and Transocean would be the only participants in the liability phase of the trial. The court concluded that the defendants' December 10th agreement had relieved

10

Allaway and Bates of their burden of proving negligence on the part of the defendants.

In September 2000, the district court conducted a trial to apportion liability. Counsel for appellees were not present. The court found that Graham Offshore breached its duty of reasonable care to the passengers onboard the Miss Paula. Specifically, the court found that the captain of the vessel did not even attempt to obtain updated weather information and that he negligently failed to realize he was heading directly into the storm. As to the other defendants, the district court concluded that Texaco and Transocean had a legal duty to transport the rig workers safely to shore pursuant to the Emergency Evacuation Plan, a plan that Coast Guard regulations required Texaco to prepare and disseminate. According to the district court, Texaco and Transocean breached this duty by failing to share weather information with the vessel. The district court also noted that Texaco owed a legal duty to the passengers because Texaco was the time-charterer of the Miss Paula and exercised at least partial control over the timing, mission, and route of the vessel. Having concluded that all three parties were liable, the district court then apportioned liability as follows: 60% to Graham Offshore, 20% to Texaco, and 20% to Transocean.

11

## II.  DISCUSSION

Among several issues raised by Transocean, the question of Transocean's legal duties to appellees overarches other issues in this case and requires our primary attention.

During the liability phase of the trial, the district court concluded that Transocean had assumed responsibility for the passengers of the Miss Paula because Transocean had designated its rig superintendent as the person in charge of implementing the Emergency Evacuation Plan (EEP).  In addition, the district court may have held that Transocean, like Texaco, shared in a hybrid duty with Graham for the safe transportation of Allaway and Bates, to the extent that elements of their transportation fell within Transocean's "sphere of control."[3]  We review *de novo* these grounds for the district court's conclusion that Transocean owed a legal duty to Allaway and Bates.  Canal Barge Co., Inc. v. Torco Oil Co., 220 F.3d 370, 376 (5th Cir. 2000).

United States Coast Guard regulations require the operator of each manned facility on the Outer Continental Shelf to

---

[3]     The district court rejected Transocean's contention that its liability to Allaway and Bates, employees covered by the LHWCA, arises only from its status under 33 U.S.C. § 905(b) as a vessel owner (of a mobile drilling rig).  We agree with the district court that appellees' claim against Transocean did not rest on vessel-based negligence, but only upon duties allegedly created by Texaco's EEP.  We have no occasion to consider the applicability of § 905(b) to these facts.

12

submit an Emergency Evacuation Plan, or EEP. 33 C.F.R. §§ 146.140, 146.210. Texaco duly submitted its evacuation plan for the DF-97. This case involves a "Level I" evacuation of non-essential personnel to shoreside facilities. The EEP states that evacuation could be by helicopter or by boat, and it includes an estimate of the total evacuation time for each method. The EEP also identifies the sources of weather information to be relied upon in determining whether to abandon the rig. Significantly, the EEP designates Transocean's rig superintendent as the "Person-in-Charge" of implementing the EEP (except in cases of "well-control situations"). As the "Person-in-Charge," the Transocean representative had the duty to advise Texaco "of any situations warranting implementation of the EEP." The contract between Texaco and Transocean was to the same effect, adding only that Transocean would consult with Texaco in deciding whether to institute precautionary measures to safeguard the rig.

Through the EEP and the contract with Texaco, Transocean was involved in the evacuation of rig workers. The EEP indicates that Texaco and Transocean would monitor the weather for the purpose of deciding whether to evacuate the rig, by what means to evacuate the non-essential personnel, and how to transfer personnel safely from the rig to the evacuation craft. The plaintiffs do not contend, nor did the district court find, that Texaco or Transocean performed these specific duties in a negligent manner.

13

Instead, Allaway and Bates contend that Transocean had a more general duty imposed by the EEP to ensure that the employees were transported safely to shore and that Transocean breached this duty by not transmitting weather information to the vessel. Viewed in retrospect, Transocean's failure to discuss weather developments with the crew of the Miss Paula may have been imprudent. However, the narrow question before us is whether the EEP imposes a legal duty on Transocean to oversee the operations of the boat or helicopter that is used to evacuate personnel from the rig. Although Transocean's rig superintendent was the "person in charge" of implementing the evacuation plan, it does not follow that Transocean assumed responsibility for every act done in furtherance of the evacuation. Nothing in Texaco's evacuation plan for the DF-97 imposed a duty on Transocean to monitor weather conditions for the purpose of assisting the Miss Paula in navigation. The general mission, route, cargo and timing of a chartered vessel's voyage are traditionally within the control of the vessel operator and the time-charterer, see Hodgen v. Forest Oil Corp., 87 F.3d 1512, 1520 (5th Cir. 1996), and the EEP does not alter that arrangement.

In fact, apart from identifying a few specific tasks, the balance of the EEP regulation requires only an index of resources and tentative plans for addressing various types of emergencies. It is by no means clear that the EEP should of its own force create legal duties. Instead, its purpose appears to be that of requiring

14

offshore operators to foresee and document possible emergency evacuation scenarios, without any assurance that the planned remedies are the only feasible plans or even the best plans when an actual emergency erupts. See 54 Fed. Reg. 21566 (May 18, 1989). The EEP regulation imposes a duty of documentation, not execution.

Given the limited, though useful, purpose of the EEP, it makes no sense to hold that its barebones allocation of tasks affixes legal responsibility on any party to offshore drilling operations beyond that which is undertaken by contract or imposed by extrinsic law. The district court thus erred in concluding that Transocean could be held liable on the basis of a specific duty to transmit weather information to the Miss Paula that does not exist in the EEP or of some more general but wholly unarticulated duty of Transocean's supervisor as the EEP person-in-charge to guarantee the flawless execution of the Miss Paula's task.

Transocean also takes issue with the district court's apparent imposition of a hybrid duty upon it to assure Appellees' safe transportation within the sphere of activity in which Transocean "exercised at least partial control" with Graham. Since the court gleaned the duty of an "exercise of partial control" only from the EEP, a holding we have found erroneous, the hybrid duty theory fails on that basis alone. More generally, however, the court's attribution of any hybrid duty upon Transocean in these circumstances represents an unwarranted extension of Hodgen. The

15

Hodgen decision synthesizes this court's caselaw describing the duties of a vessel's time-charterer to passengers on the vessel. Texaco was the Miss Paula's time charterer, not Transocean. Transocean had no direct contractual relation with Graham and, according to the record, it never had any direct contact with Graham concerning routine transportation to and from its rig, much less the evacuation in the face of Hurricane Danny. Texaco contracted with Transocean to operate Transocean's mobile rig, and Texaco contracted with Graham to supply transportation services to the rig at Texaco's instruction. The parties' practices followed their contracts. Thus, Texaco as time charterer potentially bore a hybrid duty to passengers carried by Graham, but neither the factual nor legal predicate for creating such a duty existed in Transocean's fortuitous connection to Graham. Hodgen is inapplicable.

For these reasons, the judgment against Transocean cannot stand. Accordingly, the judgment of liability against Transocean is **REVERSED.**

16