Eric JONES, et al.

v.

Susan MURPHY, et al.

Civil No. CCB–05–1287.

United States District Court,
D. Maryland.

July 11, 2008.

---

788

Sean Robert Day, College Park, MD, Barrett S. Litt, Litt Estuar Harrison Miller and Kitson LLP, Los Angeles, CA, William Charles Claiborne, III, Law Of-

fices of William Claiborne, Washington, DC, for Plaintiffs.

Karl Aram Pothier, Beverly F. Hughes, State of Maryland Office of the Attorney General, Department of Juvenile Services, Michael O. Connor Doyle, State of Maryland Office of the Attorney General, Public Safety and Correctional Services, Baltimore, MD, for Defendants.

## MEMORANDUM

CATHERINE C. BLAKE, District Judge.

Currently pending before the court are the parties' cross-motions for summary judgment on the issue of whether the gender-differentiated search policy at Central Booking violated the Equal Protection Clause. The matter has been fully briefed, and oral argument was held on June 25, 2008. For the reasons articulated below, the plaintiffs' motion for summary judgment will be granted with respect to the equal protection issue and the defendants' motion for qualified immunity will be denied without prejudice.

## BACKGROUND

Soon after arrival at Baltimore City's Central Booking, male and female arrestees are routed through the sallyport and the search room (referred to, collectively, as "search room"), in which they are searched for contraband, including weapons and drugs. Prior to January 1, 2006,[1] Post Orders for on-duty officers in Central Booking's search rooms contained different instructions for the men's and women's search rooms.[2] Officers in the female

---

1. The Post Orders currently in effect at Central Booking have male and female arrestees treated the same for search purposes—both men and women are required to "remove all clothing down to [the] undergarments." (Pl's Mot. Summ. J. Ex. 106, 107.)

2. The parties differ sharply as to whether the Post Orders reflected actual practice at Central Booking. The plaintiffs claim that arrestees were routinely subjected to strip searches down to bare skin, "either by a full-naked search or a search by which pants (or skirts)

search room received the following order: "Upon arrival, all offenders will be pat frisk searched," whereas officers in the male search room were instructed that "Upon arrival, all offenders will be searched down to their underwear. If the search room officer suspects contraband is being concealed beneath the underwear, then a strip search will be conducted." (Pl's Mot. Summ. J. Ex. 102, 103.)

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644–45 (4th Cir.2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat,* 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir.1993), and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

■ The parties differ sharply as to the appropriate level of review to be applied to the search policy.[3] The plaintiffs contend that the policy should be examined through a traditional equal protection lens—that is, the court should apply

and underwear were pulled to the knees." (Pl's Mot. Summ. J. 1 n.1.) For the purposes of these motions, both parties assume that female arrestees were searched via pat frisk and male arrestees were searched to their "last layer of clothing"; that is, to the underwear. Plaintiffs have reserved for another motion the issue of whether officers at Central Booking were actually following the Post Orders to limit the searches.

3. The parties also disagree about the effect the plaintiffs' status as pre-presentment arrestees, and not convicted prisoners, has on the

level of review to be applied. The court takes no position on the matter, save to note that it appears the Fourth Circuit generally has applied "the same legal standard for detainees as for convicted inmates with due regard for the particular circumstances of pretrial detainment," because "the concern for security is the same for pretrial detainees as for convicted inmates." *Hause v. Vaught,* 993 F.2d 1079, 1082 (4th Cir.1993). As discussed above, however, Central Booking's policy fails under even the most deferential standard.

heightened scrutiny and require an "exceedingly persuasive" justification for the gender-differentiated government policy. *See United States v. Virginia,* 518 U.S. 515, 531, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). The defendants counter that it is not heightened scrutiny that applies, but the standard espoused in *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), under which the policy must merely be rationally related to a legitimate penological interest. Even under *Turner,* however, the gender-differentiated search policy in place at Central Booking during the challenged time period does not pass constitutional muster.

Preliminarily, it is obvious that the Division of Pretrial Detention and Services ("the Division") has a legitimate penological interest in preventing prisoners from bringing weapons into the booking facility. "Prison safety and security are legitimate penological interests that [the court] must consider." *Veney v. Wyche,* 293 F.3d 726, 732 (4th Cir.2002) (citing *Washington v. Harper,* 494 U.S. 210, 223, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990)). Given that legitimate interest, the reasonableness inquiry under *Turner* centers around four factors: (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate government interest put forth to justify it; (2) "whether there are alternative means of exercising the right that remain open to prison inmates";[4] (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; (4) and the "absence of ready alternatives." 482 U.S. at 89–90, 107 S.Ct. 2254.

Here, it is questionable whether there existed a valid, rational connection between preserving safety and security on the booking floor, and searching males but not females. On this point, the defendants offer only the testimony of Deputy Commissioner Benjamin Brown, who states that "[i]t was the experience of the Division that male arrestees entering BCBIC were far more likely than female arrestees to have in their possession weapons, such as knives and, on occasion, guns, which, in turn, pose a severe threat to the safety and security of the persons on the booking floor." (Def's Mot. Dismiss Ex. 1 at ¶ 5.) Deputy Commissioner Brown also testified that this disparity was the only reason men were searched more thoroughly than women. (Pl's Mot. Summ. J. Ex. 101 at 274–75.) Brown admitted, however, that reports of this disparity were "anecdotal[ ]," (*id.* at 72), because the master records kept of seized contraband did not note whether the contraband was recovered from a male or a female (*id.* at 110–12). Moreover, when Deputy Commissioner Brown was asked about "items that arrestees commonly have on their possession that can be used as weapons," such as knitting needles, keys, rings, and belts, he admitted that the disparity evaporated: "[a] lot of these items women might be just as likely as men to have."[5] (*Id.* at 298–300.)

The defendants' argument is even more significantly weakened when the third and fourth *Turner* factors are considered. The Supreme Court noted that "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be partic-

---

**4.** This factor is not applicable here.

**5.** The Post Orders in effect during the challenged period were revised on August 20, 2004. (*See* Pl's Mot. Summ. J. Ex. 102, 103.)

Given that no copies of Post Orders prior to that date have been submitted, it is unclear how long the challenged policy was in effect.

ularly deferential to the informed discretion of corrections officials." *Turner,* 482 U.S. at 90, 107 S.Ct. 2254. To treat male and female arrestees equally for search purposes, however, Central Booking officials simply needed either to stop searching male arrestees to their underwear, or to start searching all arrestees to their underwear.[6] The latter is exactly what the Division voluntarily began doing in January of 2006. (*See* Pl's Mot. Summ. J. Ex. 106, 107.) At oral argument, the defendants' counsel did not contend that the additional searches of female arrestees has strained the Division's resources. The additional staff needed to more thoroughly search female arrestees does not appear to be overly burdensome, as the policy affects only the 20% of arrestees entering Central Booking who are female. A similar line of reasoning applies to the fourth *Turner* factor, concerning the absence of ready alternatives on the part of the governmental entity. Here, the January 2006 decision to search all arrestees to their last layer of clothing demonstrates just how readily available a constitutional alternative was to the Division. Accordingly, as to the equal protection issue, he plaintiffs' motion for partial summary judgment will be granted, and the defendants' cross-motion for partial summary judgment will be denied.

Also pending is the defendants' motion for qualified immunity. This question must be analyzed "at a high level of particularity." *Amaechi v. West,* 237 F.3d 356, 362 (4th Cir.2001) (citing *Edwards v. City of Goldsboro,* 178 F.3d 231, 250–51 (4th Cir.1999)). In the absence of further factual development concerning the adoption and implementation of the policy by the individual defendants, the defendants' mo-

tion for qualified immunity will be denied without prejudice.

A separate Order follows.

### *ORDER*

In accordance with the foregoing Memorandum, it is hereby ORDERED that:

1. Plaintiffs' Motion for Partial Summary Judgment (docket entry no. 162) is **GRANTED;** and

2. Defendants' Motion for Partial Summary Judgment (docket entry no. 184) is **DENIED** as to the equal protection issue, and **DENIED** without prejudice as to the qualified immunity issue.

fers from no other constitutional infirmity.

---

**6.** This assumes that Central Booking's policy of searching to the last layer of clothing suf-