Eric JONES, et al.

v.

Susan MURPHY, et al.

Civil No. CCB–05–1287.

United States District Court, D. Maryland.

March 19, 2009.

Barrett S. Litt, Litt Estuar Harrison Miller and Kitson LLP, Los Angeles, CA, William Charles Claiborne, III, Law Offices of William Claiborne, Washington, DC, for Eric Jones and Dana T. West.

Sean Robert Day, College Park, MD, for Eric Jones, Dana T. West, Kevin Adams, Tonia Bowie, David Colyns, Anthony Haig, Gary Saunders, Michael Washington and Aaron Ross.

Alan D. Eason, Karl Aram Pothier, Beverly F. Hughes, Michael O'Connor Doyle, William F. Brockman, State of Maryland, Office of the Attorney General, Baltimore, MD, for Susan Murphy, William Jednorski and Mitchell Franks.

1. Additional background of this litigation is set forth in the prior decisions of the court. *See Jones v. Murphy,* 470 F.Supp.2d 537 (D.Md.2007) (defendants' motion to dismiss); *Jones v. Murphy,* 567 F.Supp.2d 787 (D.Md.2008) (plaintiffs' motion for summary judgment). Familiarity with those decisions is presumed.

## MEMORANDUM

CATHERINE C. BLAKE, District Judge.

Now pending before the court is plaintiffs' motion for class certification. The plaintiffs seek to certify four classes of arrestees subjected to alleged unconstitutional policies or practices at the Baltimore Central Booking and Intake Center ("CBIC"). The defendants, current and former wardens of CBIC, oppose the motion. The matter has been fully briefed, and oral argument was held on February 18, 2009. For the reasons articulated below, the plaintiffs' motion will be granted in part and denied in part.

## BACKGROUND

CBIC is the central location for booking and processing arrestees in Baltimore City. The plaintiffs assert that the defendants are liable for unconstitutional strip searches of arrestees as well as unconstitutional overdetentions of arrestees at CBIC.[1] The plaintiffs propose four classes, each with a class period beginning May 12, 2002:(1) the overdetention class, represented by Kevin Adams, Tonia Bowie, Anthony Haig, and Michael Washington, consisting of arrestees detained at CBIC for more than 48 hours after arrest without release or presentment before a judicial officer; (2) the suspicionless strip search class, represented by Anthony Haig, Gary Saunders, Michael Washington, and Dana West, consisting of persons arrested for crimes not involving weapons, drugs, or felony violence, who were strip searched prior to or without presentment before a judicial officer;[2] (3) the non-private strip search class, represented by Anthony Haig, Gary Saunders, Michael Washington, and Dana West, consisting of arrestees subjected to strip searches at CBIC in the presence of other arrestees or staff not involved in the search prior to or without presentment before a judicial officer; and (4) the equal protection underwear strip search class, represented by Kevin Adams,

2. The plaintiffs define a strip search as "the removal, pulling down, or rearrangement of clothing for the visual inspection of a person's genital and/or anal areas, which may also include requiring the person to squat and cough, in the presence of one or more guards." (Pls.' Proposed Class Definitions at 2.)

Gary Saunders, and Aaron Ross, consisting of male arrestees at CBIC who were searched down to their underwear prior to or without presentment before a judicial officer while female arrestees were not.[3]

## *ANALYSIS*

To obtain class certification, the plaintiffs must meet all four requirements of Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b). *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir.2003). The plaintiffs seek certification of the proposed classes under Rule 23(b)(3), which requires that common questions of law or fact predominate.

### A. Rule 23(a)

Pursuant to Rule 23(a), for each class, the plaintiffs must satisfy the following elements: "(1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims and defenses of class representatives; and (4) adequacy of representation." *Gunnells*, 348 F.3d at 423. The defendants do not challenge the plaintiffs' ability to satisfy the first three Rule 23(a) requirements, and the court will address them briefly. As to numerosity, the plaintiffs have put forth sufficient evidence that the proposed classes will number in the thousands and that joinder of all members is thus impracticable. The commonality and typicality requirements tend to merge because they "[b]oth serve as guideposts for determining whether ... the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected...." *Stott v. Haworth*, 916 F.2d 134, 143 (4th Cir.1990) (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). The plaintiffs satisfy commonality and typicality because in each proposed class there are common issues that are central to each of the named plaintiff's and proposed class member's claims: whether the defendants implemented or were deliberately indifferent to a particular policy, practice, or custom that offends the Constitution and was uniformly applied to all class members.

The defendants raise some objections to the adequacy of representation, contending that the named plaintiffs in the suspicionless strip search class, who had merely to remove their clothes, will not adequately represent those individuals who were subjected to full body cavity searches and likely suffered greater damages. The court notes, however, that "the size of a named plaintiff's financial stake in the action is not the determinative issue; rather, the issue is whether the named plaintiffs will adequately protect the interests of the class." *Bynum v. District of Columbia*, 214 F.R.D. 27, 36 (D.D.C. 2003); *see also In re Oxford Health Plans*, 191 F.R.D. 369, 375 (S.D.N.Y.2000) ("[T]here is no requirement in Rule 23 concerning the amount of loss either in gross or compared with the losses of others, necessary to qualify as a class representative."). The defendants offer only their own speculation that divergent interests will emerge regarding damage awards. As discussed below, in the event the defendants are held liable, the various options available for calculating damages permit variation according to particularized injuries. Certainly, if unforeseen issues arise that compromise the adequacy of the named plaintiffs or their counsel to represent the class, the court can revisit the issue. But, at this point, the court will not "base a finding of inadequate representation on [an] unfounded assertion that the interests of the class members might potentially be at odds." *Bynum*, 214 F.R.D. at 36. The court is satisfied with the adequacy of representation; the named plaintiffs' interests are not opposed to those of the other class members and the class counsel is qualified, experienced, and able to conduct the litigation.

### B. Rule 23(b)(3)

Rule 23(b)(3) requires the court to find (1) that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" (the predominance requirement), and (2) that "a class action is superior to other available methods for the fair and efficient adjudication of the con-

---

**3.** The plaintiffs are no longer seeking certification of a fifth class: an equal protection strip search class composed of all males strip searched at CBIC while female arrestees were not. (Pls.' Proposed Class Definitions at 3.)

troversy" (the superiority requirement). Fed.R.Civ.P. 23(b)(3). The predominance requirement is similar to but "far more demanding" than Rule 23(a)'s commonality requirement and "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 n. 4 (4th Cir.2001). The superiority requirement ensures that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Rule 23(b)(3) sets forth a number of factors a district court should consider in deciding whether a class action is superior to other available methods: (1) the individual interests of class members in controlling separate litigation; (2) whether and to what extent proposed class members have already commenced similar litigation; (3) the desirability of concentrating litigation in the particular forum; and, most importantly for purposes of this litigation, (4) the difficulties likely to be encountered in the management of a class action. *Id.* The defendants challenge the plaintiffs' ability to meet the requirements of Rule 23(b)(3) for each proposed class.

### i. Overdetention Class

 The plaintiffs contend, and the court agrees, that the predominant issues in determining the defendants' liability can be determined on a class-wide basis, including whether the defendants held the class members more than 48 hours without presentment or release, whether the defendants oversaw a practice of allowing presentment delays, and whether these alleged overdetentions violate the Constitution. The plaintiffs present sufficient evidence that determining who was detained more than 48 hours is a fairly

straightforward factual inquiry that can be culled from the State's own information in its Automated Booking System.[4]

The defendants argue that the individualized inquiries into whether there were legitimate reasons for the delays will predominate over common issues. The burden is on the defendants to demonstrate such a legitimate reason. *See Riverside v. McLaughlin,* 500 U.S. 44, 57, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Considering that the federal law requiring presentment within 48 hours is twice as long as Maryland's requirement of 24 hours, *see* Maryland Rule 4–212(f); *Logan v. State,* 289 Md. 460, 425 A.2d 632, 635 (1991), the court agrees with the plaintiffs that such individualized inquiries do not threaten to predominate the common issues in this claim.[5]

The only other significant issue regarding this claim is the remedy: the defendants contend that if the plaintiffs succeed in establishing liability, the potential damage awards for the individual class members may vary significantly and individualized inquiries into damages will predominate. The need for individualized damage decisions in class action litigation, however, does not necessarily preclude a finding that common questions of law and fact predominate over individual issues on liability. *See Gunnells,* 348 F.3d at 428; *see also Bynum,* 214 F.R.D. at 39. The court is satisfied that the aforementioned common issues of law and fact predominate. Moreover, it is unclear at this stage in the litigation what degree of individualization the determination of damages will require. *See Tardiff v. Knox County,* 365 F.3d 1, 6–7 (1st Cir.2004); *Johnson v. District of Columbia,* 248 F.R.D. 46, 57 (D.D.C.2008). While it is too early to rule on issues related to calculating damages, the court notes that the plaintiffs propose two potential methodologies, scaling damages based on the length of over-

---

4. The plaintiffs contend that the defendants' database provides the date and time of arrest and, in most cases, either the date and time of presentment or, for those released without charge, the date and time of release. As for those cases where the presentment field is not populated, the plaintiffs rely on time-date scans showing the arrestee's room-to-room movements at CBIC to determine who was there 48 hours before presentment.

5. The plaintiffs have provided deposition testimony of a former assistant warden at CBIC claiming that during his tenure he was able to maintain a swift booking process by continually tracking the booking queue and that it was unusual for an arrestee to be held more than 24 hours before presentment. (Pls.' Reply Ex. 156 at 48–49, 142–43.) Such evidence suggests that any legitimate reasons for delay will be limited.

detention, or creating subclasses distinguishing between individuals who were never charged, those charged but released on their own recognizance, and those held on a bond.

■ As to the superiority requirement, the court agrees that a class action is superior to other forms of litigation to resolve this claim. Class treatment is appropriate in situations, such as here, where the individual claims of many of the putative class members are so small that it would not be economically efficient for them to maintain individual suits. *See, e.g., Bynum,* 214 F.R.D. at 40. In certifying a class of individuals alleging they had been unlawfully strip searched at a county detention facility, another judge in this court concluded that "resolution of the liability and damages issues within the context of a class action is far more efficient than individual prosecution of damages actions. A class action is also the fairest means to settle this controversy since it is unlikely that most class members would pursue these claims on their own." *Smith v. Montgomery County, Md.,* 573 F.Supp. 604, 613 (D.Md.1983). In this case, as in *Bynum,* both parties acknowledge that a number of individual class members who were allegedly overdetained stand to recover only a small amount of damages. The defendants assert, for example, that a number of those allegedly overdetained were committed to the Baltimore City Detention Center and thus the delay in presentment did not affect the overall length of detention. Accordingly, an individual class member's interest in controlling a separate action against the defendants appears low. Further, given the relatively straightforward task of identifying class members, the court is satisfied that no significant management issues will arise if this action is maintained as a class. Lastly, litigation of all class members' claims in the present forum is appropriate.

In light of the plaintiffs' ability to satisfy all of the required elements, the court will certify an overdetention class pursuant to Rule 23(b)(3).

### ii. Suspicionless Strip Search Class

■ Here again, the defendants primarily challenge the plaintiffs' ability to satisfy the predominance requirement. Specifically, they argue that determining whether potential class members' searches were or could

have been conducted pursuant to reasonable suspicion—and thus were not illegal—will predominate over common questions of law and fact. Considering, however, that the proposed class is limited to individuals arrested on non-violent, non-drug, and non-weapons offenses who were strip searched pursuant to a blanket policy, the court is not convinced that individualized determinations regarding reasonable suspicion will predominate or cause the class litigation to become unmanageable. *See In re Nassau County Strip Search Cases,* 461 F.3d 219, 229–30 (2d Cir.2006) (noting that the class definition, which included those arrested for misdemeanors or non-criminal offenses and strip searched pursuant to the defendants' blanket policy, avoided questions of probable cause in determining class membership, and that a potential reasonableness defense, which in that case would be *de minimis,* as a general matter did not forestall class certification); *Tardiff,* 365 F.3d at 6 (noting, where strip search classes excluded those arrested for drugs, weapons or violent felonies, that if there were a rule or custom to strip search every arrestee, "then it is a fair guess that most arrestees ... were strip searched on this basis," and those who were not "may well not be numerous"); *McBean v. City of New York,* 228 F.R.D. 487 (S.D.N.Y.2005) (concluding that where class membership was not defined with respect to the existence of reasonable suspicion, but rather was defined as those searched pursuant to blanket policy, no evidentiary hearings would be necessary to determine class membership). Rather, whether and for how long a strip search custom or policy existed, the constitutionality of that policy, and to whom the policy was applied are the predominant liability issues in the case of each proposed class member. *See Dodge v. County of Orange,* 226 F.R.D. 177, 181–82 (S.D.N.Y.2005).

The plaintiffs have presented sufficient evidence such that a reasonable jury could find a blanket strip search policy existed and was consistently applied by most if not all of the correctional officers at CBIC during the class period. The defendants, then, would carry the burden of demonstrating that a particular class member was or could have been lawfully strip searched based on reasonable

suspicion. *See, e.g., In re Nassau County Strip Search Cases,* 461 F.3d at 229–30; *Dodge,* 226 F.R.D. at 182 (concluding that whether a particular class member could have been lawfully strip searched based on reasonable suspicion is a defense to a particular class member's claim for damages); *McBean,* 228 F.R.D. at 503 (concluding that where class was limited to plaintiffs arrested on non-narcotics and weapons-related offenses, individual defenses to liability would be limited); *Blihovde v. St. Croix County, Wis.,* 219 F.R.D. 607, 621–22 (W.D.Wis.2003) (concluding that if the plaintiffs could establish liability, then the defendants would have the burden to show that a particular search was reasonable, and, because the class was limited to those arrested for misdemeanors or ordinance violations unrelated to weapons or illegal drugs, there likely would not be much evidence of reasonableness); *Mack v. Suffolk County,* 191 F.R.D. 16, 24 (D.Mass. 2000) ("To require Plaintiff to prove that each individual search was unsupportable, as well as indiscriminate, would be unnecessary and unfair. Given that these [individuals] were routinely strip-searched, the burden rests on Defendants to demonstrate that particular searches were reasonable.").[6]

The defendants further argue that individual issues of class membership will predominate because of conflicting testimony among the guards as to who among them conducted indiscriminate strip searches and during what time periods the searches were conducted. It is undisputed that the defendants did not keep records as to which arrestees were strip searched; however, if the defendants maintained a blanket strip search practice, then evidence suggesting that one or two guards strayed from that practice will not defeat class certification. *See, e.g., Blihovde,* 219 F.R.D. at 618 (certifying the plaintiff class on the issue of the defendants' liability where the defendants offered the testimony of one deputy sheriff who claimed she did not conduct strip searches absent

probable cause); *Doe v. Calumet City,* 754 F.Supp. 1211, 1215 n. 8 (N.D.Ill.1990) (deciding defendants' liability for strip search policy on class wide basis where class consisted of all women arrested on a misdemeanor or ordinance violation and defendants presented testimony of three dispatchers claiming they did not strip search all arrestees); *see also Dodge,* 226 F.R.D. at 182 (rejecting the defendants' contention that whether an officer correctly applied the alleged policy would predominate noting that "[t]he only way to apply such a policy incorrectly is to fail to strip search a newly-arrived detainee" and such a person, by definition, is not a member of the class). As noted above, based on the evidence presented to the court, a reasonable jury could find that a blanket strip search custom, practice, or policy existed and that it was consistently applied—the predominant issues for all class members. The burden is again on the defendants to present sufficient evidence that particular arrestees were not subjected to the blanket policy.[7]

Lastly, the defendants contend that individual issues as to damages will predominate. As discussed above, individualized damages do not necessarily preclude certification. A number of federal courts that have considered this argument have certified strip search classes despite the potential for individualized damage determinations. *See, e.g., Tardiff,* 365 F.3d at 6; *Johnson,* 248 F.R.D. at 57; *Blihovde,* 219 F.R.D. at 621; *Mack,* 191 F.R.D. at 25. Moreover, as noted above, it may not be necessary to proceed with individualized damage determinations. If such individualized determinations are required, the court can select from a number of options such as "(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they

---

6. The court need not determine at this point whether the defense arises as to liability or damages and notes that it is largely irrelevant in this case because the defendants do not maintain records establishing which arrestees, if any, were searched pursuant to a reasonable suspicion that they possessed contraband. Lacking any such evidence, a viable defense seems unlikely.

7. According to the plaintiffs, it would be possible, using the defendants' database, to exclude individuals from the class who were searched by a particular officer shown *not* to have applied the alleged blanket strip search policy. (*See* Pls.' Class Cert. Mem. Ex. 124 ¶ 13.)

may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir.2004). The plaintiffs have proposed using a damages matrix such that a jury could set a schedule of damages for class members or using statistical sampling to try damages on a class-wide basis. The court reserves ruling on the propriety of damages methodologies at this stage in the litigation, but is satisfied that common issues predominate for purposes of class certification.

As to superiority, the court reiterates its findings with regard to the overdetention claim, as the issues are largely similar. Here again, an individual class member's interest in controlling a separate action against the defendants appears to be relatively low, and this is a proper forum for litigating all of the class members' claims. This court's discussion of the efficiency and fairness of class action litigation in *Smith* is particularly relevant because that case involved a blanket strip search policy. While manageability issues are more likely to arise in this context due to the issues involved in identifying class members, the court is not convinced that they will overwhelm or undermine the inherent advantages of class action litigation. *See, e.g., Blihovde*, 219 F.R.D. at 622.

In light of the plaintiffs' ability to satisfy all of the required elements, the court will certify a suspicionless strip search class pursuant to Rule 23(b)(3).

### iii. Equal Protection Underwear Strip Search and Non–Private Strip Search Classes

Both of these proposed classes would likely number in the hundreds of thousands, as they would include nearly all male arrestees brought to CBIC during the proposed class period. (*See* Pls.' Class Cert. Mem. at 26.) While common questions of law and fact likely predominate as to both claims, the manageability issues that will inevitably arise from certifying classes of such enormity seeking non-economic damages outweigh the

potential benefits of certification. The plaintiffs acknowledge that the individual claims are small and, while the court agrees that class actions serve the purpose of aggregating these sorts of claims that otherwise may not be litigated individually, the court does not see the wisdom in certifying a class pursuant to Rule 23(b)(3) when the individual claims are small and the potential for manageability problems, including the provision of adequate notice, are particularly high. Further, the court notes that none of the named class representatives were charged with drugs, weapons, or violent felony offenses, whereas a substantial number, perhaps a majority, of the members of these proposed classes were charged with such crimes. While the privacy and equal protection rights are not controlled by the type of offense charged, nonetheless, such variation in circumstances between the named plaintiffs and the proposed class members raises concerns regarding the typicality and adequacy of representation requirements of Rule 23(a), while these requirements were easily satisfied by the more homogeneous overdetention and suspicionless strip search classes. Accordingly, the court will deny the plaintiffs' motion to certify the equal protection underwear strip search class and the non-private strip search class.[8]

### CONCLUSION

As discussed above, the court will grant the plaintiffs' motion to certify the overdetention and suspicionless strip search classes pursuant to Rule 23(b)(3) and will deny the motion as to the equal protection underwear strip search and non-private strip search classes. The court reserves the right to revisit this decision if unforeseen problems arise making class certification with respect to liability or damages inappropriate. A separate order follows.[9]

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

---

**8.** Male members of the suspicionless strip search class may be able to prove they were subjected to non-private strip searches as an additional element of damages.

**9.** The definitions in the Order are intended to address the technical issues identified by defendants; further refinement may be necessary.

1. the plaintiffs' motion for class certification (docket entry no. 181) is **GRANTED** in part and **DENIED** in part;

2. the following two classes, hereby defined by the court, are certified as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure:

a. Overdetention Class: Each person who, during any time from May 12, 2002 until October 3, 2005, was arrested in the City of Baltimore and [was entitled to presentment, but was] then held at the Baltimore Central Booking and Intake Center for more than 48 hours after arrest without being released or presented before a court commissioner or other judicial officer;

b. [Suspicionless] Strip Search Class: Each person who, during any time from May 12, 2002 until April 30, 2008, was taken to Baltimore Central Booking and Intake Center (a) on charges [or in cases] not involving weapons, drugs, or felony violence, and (b) strip searched (c) prior to or without presentment before a court commissioner or other judicial officer. A "strip search" is the removal, pulling down, or rearrangement of clothing for the visual inspection of a person's genital and/or anal areas, which may also include requiring the person to squat and cough, in the presence of one or more guards;

3. the following named plaintiffs represent the Overdetention Class: Kevin Adams, Tonia Bowie, Anthony Haig, and Michael Washington;

4. the following named plaintiffs represent the [Suspicionless] Strip Search Class: Anthony Haig, Gary Saunders, Michael Washington, and Dana West;

5. William Claiborne, Sean R. Day, and Barrett S. Litt shall serve as class counsel; and

6. within 30 days of the date of this Order, the parties shall file an agreed-upon proposed order scheduling further proceedings, including class notification procedures if notice is sought at this time; in the event the parties are unable to reach agreement within 30 days, each party shall file a separate proposed order. The parties may also com-ment on the language of the class definitions set out in this Order.